UNITED STATES BANKRUPTCY COURT                **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK


-------------------------------------------------------------x
In re:                                                        Chapter 11

VERITAS FINANCIAL CORP.,                                      Case No. 05-10774

                             Debtor.
-------------------------------------------------------------x
EAST COAST VENTURE CAPITAL, INC. and
VERITAS FINANCIAL CORPORATION,


                            Plaintiffs,

          v.                                          Adv. No. 05-1837

BROWN RUDNICK BERLACK ISRAELS, LLP,
Individually and as Successor to BERLACK
ISRAELS & LIBERMAN, LLP, *et al.*,

                            Defendants.
-------------------------------------------------------------x

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

STEWART OCCHIPINTI, LLP
Attorneys for Plaintiffs
       By: Charles A. Stewart, III, Esq.
65 West 36th Street, 7th Floor
New York, New York 10018

NIXON PEABODY LLP
Attorneys for Defendants
       By: Frank N. H. Christmas, Esq.
          Frank W. Ryan, Esq.
437 Madison Avenue
New York, New York 10022

VORYS, SATER, SEYMOUR AND PEASE LLP
Attorneys for Defendants
       By: Pamela A. Bresnahan, Esq.
          Steven R. Becker, Esq.
1828 L Street, N.W., Suite 1111
Washington, D.C. 20036-5109

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

<u>Background</u>

Plaintiff East Coast Venture Capital, Inc. ("East Coast") is a small business investment company ("SBIC") that borrowed money on favorable terms from the Small Business Administration ("SBA") and used the funds to make investments in qualified enterprises. Plaintiff Veritas Financial Corporation (the "Debtor") is its shareholder. This is an action by the Debtor and its affiliate ("Plaintiffs") against the law firm that previously represented them in connection with certain securities regulation matters and the firm's partner in charge of the representation ("Defendants").

The amended complaint alleges nine counts against the Defendants. The bulk of the complaint charges the Defendants with malpractice, claiming in substance that Defendants' negligent representation resulted in a lawsuit against East Coast by an investor and his company (the "Appel Group") for violations of the Federal securities laws (the "Appel Federal Lawsuit") and that this lawsuit caused the SBA to defer processing East Coast's application for funding. Counts 1-7 of the amended complaint identify seven separate investments that Plaintiffs allegedly were unable to make because of Defendants' alleged negligence and the damage allegedly flowing therefrom. Plaintiffs' eighth cause of action seeks recovery of the legal fees that East Coast paid to Defendants for defending it in the Appel Federal Lawsuit and count nine claims that the defendant firm was a faithless servant in that it continued to represent East Coast in the suit after a conflict of interest became apparent, that it breached its fiduciary duties and should forfeit all compensation received.

2

Both parties have moved for partial summary judgment in their favor, on very different theories. Defendants' motion seeks summary judgment in their favor on the first seven counts of the complaint and asserts, in substance, that as a matter of law Plaintiffs cannot demonstrate that Defendants' alleged negligence was the proximate cause of Plaintiffs' claimed losses. In brief, Defendants assert that the applicable standard is "but for" causation, and that the Plaintiffs cannot show that "but for" the Appel Federal Lawsuit, the SBA would have processed East Coast's loan applications and would have made available the necessary capital to allow East Coast to amass the alleged profits therefrom. Plaintiffs have responded to Defendants' motion and in addition have cross-moved for partial summary judgment on their behalf on the theory that Defendants' legal advice was wrong as a matter of law and that the Court should determine on the instant record that Defendants were negligent and were also faithless servants.

For the reasons stated below, both motions for summary judgment are denied.

## Discussion

### Standards for Summary Judgment

The principles that govern summary judgment motions are well-known. In accordance with Bankruptcy Rule 7056, which incorporates Fed. R. Civ. P. 56, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005). The moving party bears the

burden of demonstrating the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *see also Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.*, 161 B.R. 87, 89 (S.D.N.Y. 1993). When a court considers a motion for summary judgment, it must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1318 (2d Cir. 1975); *see also Ames Dep't Stores, Inc*., 161 B.R. at 89. However, a party opposing a motion for summary judgment cannot rest on its pleadings but must provide evidence to support the essential elements of its case. *See Anderson*, 477 U.S. at 248; *DePippo v. Kmart Corp.*, 335 B.R. 290, 294-95 (S.D.N.Y. 2005), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Defendants' Motion

Defendants' motion is based on the proposition that, in the words of the Defendants' memorandum of law,

> "While the Appel securities lawsuit was *a* reason why the SBA would not provide loan commitments to East Coast in 2002 and early 2003, there were other, independent reasons that precluded the SBA from considering whether to extend credit to East Coast. Those reasons preceded, ran contemporaneously with and outlasted the Appel federal securities lawsuit. Specifically, East Coast had other lawsuits and regulatory compliance problems, which will be addressed below, that caused the SBA to refuse to process the loan commitment applications that are the basis for Plaintiffs' damages claims in Counts I-VII of the Amended Complaint."

Defs' Mem. of Law, pp. 7-8 (emphasis in original, citation omitted). Defendants reason that since the SBA had other issues with East Coast at the time, Plaintiffs cannot prove that the Appel Lawsuit was *the* one factor that caused the SBA to hold up East Coast's application and cause it the damage claimed in the amended complaint.

4

Plaintiffs have responded with a barrage of evidence that the Appel Federal Lawsuit was the one issue that dominated the SBA's agenda and resulted in all or at least some of the delay that allegedly damaged East Coast. Plaintiffs' evidence includes the following: a certification from East Coast's chairman, Zindel Zelmanovitch, attesting among other things to the facts relating to East Coast's 2002 application for "leverage" from the SBA and the reasons for the delays; a declaration from East Coast's president, Fredrick Schulman; extensive excerpts and exhibits from the deposition of the SBA officer in charge of the relationship with East Coast, including a memorandum from her to the new area manager in preparation for an April 2003 meeting that stated, among other things, that "The Licensee [East Coast] was informed that the SBA would not process the application due to outstanding lawsuits involving the Licensee and the Licensee's president, Mr. Zindel Zelmanovitch;" an expert report from Ronald C. Cibolski, a consultant and former SBA officer with 25-years' experience, stating his opinion that the other issues considered by the SBA in 2002-2003 relating to East Coast were not substantial enough to have delayed funding and that the Appel Lawsuit was the single issue that was substantial enough to cause a delay; a certification from Walter Peterson, a consultant and former SBA officer describing the SBA's procedures for reviewing and acting upon leverage applications; and a certification from Lee Forlenza, counsel for East Coast in an action brought by Bruno Magli, which was another lawsuit pending against East Coast in the 2002-2003 time period, alleging that the Bruno Magli suit did not substantially involve East Coast as opposed to its principal, Zelmanovitch.

Defendants' response rests on three principal points. First, Defendants point out, the Cibolski certification states that, "At East Coast's counsel's direction, I have

disregarded each of the lawsuits filed and pending against East Coast at the time of the

2002 applications for leverage." Cibolski Certif. at ¶ 30(c). As a result, at the time

Cibolski certified that the Appel Federal Lawsuit was the single hurdle to SBA approval,

he gave no consideration to the effect of a separate lawsuit commenced by the Appel

Group in 2002 against East Coast and its officers and directors, including Zelmanovitch.[1]

Thus, Defendants assert, the Appel Federal Lawsuit was not the sole cause of the SBA

position and the Cibolski affidavit should be disregarded.

Defendants' second point is to parse the wording of the SBA's communications

with East Coast over a lengthy period as well as the deposition record and to point out

that the SBA referred to "lawsuits" as well as other issues with East Coast. For example,

although the text of the April 2003 SBA memorandum quoted above makes it clear that

the author was talking about the Appel charges, her memorandum refers to "lawsuits" in

the plural. Although Plaintiff's point out that when she was deposed, she initially stated

that the other issues that were outstanding at the time were not material, Defendants'

respond that she later allegedly amended this testimony and argue: "Thus, Plaintiffs

cannot show the existence of a genuine dispute based upon Ms. Stephens-Kelly's initial

'no' answer. Ms. Stephens-Kelly promptly corrected her testimony and subsequently

reaffirmed that the Findings and Other Matter did have to be addressed to the SBA's

---

[1] This was a suit brought in New York State court that claimed fraudulent misrepresentation by East Coast,
Zelmanovitch and others in connection with the Appel Group's investments and that contained shareholder
derivative claims on behalf of the company, asserting in substance that Zelmanovitch and the other
directors of East Coast had mismanaged the company and used it as a financing source for Zelmanovitch's
other business interests. This suit was voluntarily dismissed by Appel, without prejudice, when he brought
the Appel Federal Lawsuit claiming violation of the securities laws, but Defendants argue that this was one
of the suits that caused the SBA to suspend lending to East Coast. Moreover, Defendants' point out that
Zelmanovitch took a "voluntary sabbatical" from East Coast in the fall of 2002, perhaps as a consequence
of this lawsuit.

satisfaction before it would process East Coast's loan application." (Defs' Reply Mem.
at 15.) [2]

Finally, Defendants note that "Plaintiffs do not dispute that Defendants' Motion
for Partial Summary Judgment correctly sets forth the law on proof of causation in a legal
malpractice lawsuit (must show 'but for' causation)." Defs.' Reply Mem. at 18.
Defendants argue there and in their principal memorandum that 'but for' causation in a
malpractice lawsuit requires a plaintiff to show that no other factors could have caused
the plaintiff's damages and that a common requirement for proof of causation in a tort
suit, that the defendant's conduct be a "substantial" causative factor, is not sufficient.

Defendants' three points are well-taken but demonstrate why it would be
inappropriate to determine the relevant issues on this summary judgment motion. For
example, it may be (as Defendants argue) that the Cibolski certification assumes away a
key factor in the case, Appel's charges of misfeasance against Zelmanovitch, and,
accordingly, for that reason and others, Cibolski's opinion may be of little or no probative
value. In any event, the trier of fact should be able to consider Cibolski's testimony after
cross examination. Similarly, it may be that the weight of the deposition testimony of
Ms. Stephens-Kelly is that the Appel Federal Lawsuit was one of only several causative
factors and that her "initial 'no' answer" (Defendants' words) should be disregarded by
the trier of fact. Nevertheless, on a motion for summary judgment, the court cannot
determine facts that have been put at issue and must draw all inferences as to disputed
facts in favor of the party against whom summary judgment is sought. *Heyman v.
Commerce & Indus. Ins. Co.,* 524 F.2d at 1318; *Ames Dep't Stores, Inc.*, 161 B.R. at 89.

---

[2] "Findings" and "Other Matters" are terms of art used by the SBA to characterize certain issues that may
be outstanding in connection with a loan application. The parties dispute whether the Findings and Other
Matters outstanding as to East Coast during the 2002-03 period were also sufficient to hold up funding.

Drawing all inferences against the Defendants, they have not shown on this record that no

trier of fact could conclude that *the* issue that caused at least some material portion of the

delay in SBA consideration of East Coast's funding application was the Appel Federal

Lawsuit.

That brings us to the question of causation. There is no dispute in this malpractice

case that under the governing law of New York, Plaintiffs must establish that "but for"

the lawyer's negligence, the plaintiff would not have suffered the claimed loss. *See, e.g.,*

*Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 10 A.D.2d 267,

272, 780 N.Y.S.2d 593, 596 (1st Dep't 2004), where the Court said, "Under New York

law, to establish the elements of proximate cause and actual damages, the client must

meet the 'case within a case' requirement, demonstrating that 'but for' the attorney's

conduct the client would have prevailed in the underlying matter or would not  have

sustained any ascertainable damages."  10 A.D.2d at 271-72 (citations omitted); s*ee also,*

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir. 2005); *Trautenberg v. Paul, Weiss,*

*Rifkind, Wharton & Garrison*, 06 Civ, 14211 (GBD), N.Y.L.J. Aug. 9, 2007, p.29, col. 1

(S.D.N.Y. Aug. 2, 2007); *Bishop v. Maurer*, 33 A.D.3d 497, 499, 823 N.Y.S.2d 366 (1st

Dep't 2006); *Between the Bread Realty Corp. v. Salans Hertzfeld Heilbronn Christy &*

*Viener,* 290 A.D.2d 380, 736 N.Y.S.2d 666, 668 (1st Dep't 2002). However, the question

whether the alleged malpractice was the sole cause of at least some of the delay in

processing East Coast's application and thus the sole cause of some of the claimed

damages presents a disputed issue that cannot be determined on this record.  It must be

recalled that the period of delay allegedly extended from June 2002 to August 2003.  In

8

any event, summary judgment is an inappropriate vehicle on which to make these disputed factual determinations.

Defendants' motion for summary judgment must be denied.

Plaintiffs' Motion

Plaintiffs have also moved for partial summary judgment, on a different ground. Plaintiffs argue that as a matter of law Defendants committed malpractice by failing to advise them that the Appel Group would have a right to rescind any purchase of securities made at a time when East Coast had a registration statement under review at the SEC. The Appel Group's right of rescission assertedly arose by virtue of the fact that the issuance of securities to them violated the securities laws because it was made at a time when the issuer's filed registration statement had not been deemed effective by the SEC and because the SEC's "integration" rules, integrating certain private placements with a public offering, made the private placement exemption unavailable under such circumstances. Plaintiffs argue in substance that Defendants' representation was unreasonable and negligent as a matter of law and that the SEC rules require a private placement to be integrated with a public offering except in limited circumstances, such as where the offering is made to a limited number of highly sophisticated investors (QIBs and/or accredited investors). Plaintiffs also contend that as a matter of law Defendants later breached their fiduciary duties by representing East Coast in the Appel Federal Lawsuit at a time when the interests of the firm and its client diverged and the parties had a clear conflict of interest.

Defendants' response to Plaintiffs' cross-motion on the malpractice claim is sufficient to deny the motion on the instant record. Defendants say that they informed

East Coast of the securities law issue and Plaintiffs determined to go forward with knowledge of the risks. Although Defendants do not specifically aver that they informed their client of the risk that the Appel Group might be able to rescind the transaction, they have adequately disputed the contention that they acted negligently. As Defendants argue, a lawyer is not liable for malpractice if the lawyer has posed one among several reasonable alternative courses of action to the client and warned the client of the risks. *See, e.g., Rosner v. Paley*, 65 N.Y.2d 736, 738, 492 N.Y.S.2d 13, 14 (1985).

Plaintiffs deny that Defendants could have acted reasonably by merely giving the clients several "reasonable alternative courses of action" because any issuance of securities to the Appel Group would have violated the securities law, and the advice could not be deemed reasonable. The legal rules are not as clear as Plaintiffs assert. The SEC's integration doctrine provides that an issuer cannot use two or more exemptions to avoid registration of what is in reality a single transaction and also sets forth certain criteria for determining what constitutes a single offering for purposes of registration. *See, e.g.*, *Wade, The Integration of Securities Offerings: A Proposed Formula that Fosters the Policies of Securities Regulation*, 25 Loy. U. Chi. L.J. 199 (1994). When an issuer proposes to rely on a private placement exemption at a time when a public offering is contemplated or pending, there is a possibility that the offerings will be deemed integrated and the private placement exemption will be deemed unavailable. As Wade puts it, "Unless the proposed offerings qualify under one of the limited safe harbors from integration, the issuer must decipher the SEC's five factor test to determine whether offerings should be integrated. Such determinations have proven immensely difficult for both prospective issuers and the SEC." The five factors are: whether the offerings are

part of a single plan of financing; whether the offerings involve issuance of the same

class of security; whether the offerings are made at or about the same time; whether the

same type of consideration is to be received; whether the offerings are made for the same

general purpose. Securities Act Release No. 4552 (1962).[3]

   In the instant case, Plaintiffs make a strong case that the issuance of securities to

the Appel Group and the proposed public offering satisfied most of the five points for

integration.  It appears on the instant record that the same class of security was involved

and that the offerings were made at the same time, for the same type of consideration and

for the same general purpose.  Nevertheless, no determination can be made on this record

that there was the same plan of financing.  One authoritative commentary has stated that

an issuer need not refute each of the five parts of the test in order to avoid integration. *See*

Louis Loss and Joel Seligman, *Securities Regulations 3d* § 3-C-1, n.21 (2006), citing

*Livens v. William D. Witter, Inc.*, 374 F. Supp 1104, 1107 (D. Mass. 1974).[4]  The SEC

has taken the position that the simultaneous issuance of securities to a small number of

sophisticated  institutional investors will not be integrated.  *See Black Box Incorporated*,

1990 WL 286633 (SEC no action letter avail. June 26, 1990);  *Squadron, Ellenoff,*

*Plesent & Lehrer*, 1992 WL 55818 (SEC interpretive letter avail. Feb. 28, 1992).

Plaintiffs assert that the Appel Group does not meet this test, citing *Sonnenblick, Parker,*

*& Selvers*, 1986 WL 66490 (SEC no action letter avail. Jan 1, 1986).  Nevertheless,

Plaintiffs also recognize that the five factors have launched "more than forty years of

ambiguity, confusion and contradiction."  Pl.'s Reply Mem. at 11, n. 5, quoting

---

[3] This Court had occasion to deal with some of the complex issues that arise in connection with the integration doctrine in *In re Board of Directors of Multicanal, S.A.*, 340 B.R. 154, 174-78 (Bankr. S.D.N.Y. 2006).
[4] On the other hand, as the same text warns, all five factors need not be demonstrated to justify integration. *Id*. at § 3-C-1.

McKinney, *Factoring the Ambiguity:  A Futile Attempt to Understand the Ambiguous Nature of the Integration Doctrine's Five-Factor Test,* 31 Sec. Reg. Law J. 337 (Fall 2003).  The Court's conclusion from all of this is not, as Plaintiffs would have it, that a finding should be made that Defendants committed malpractice.  The conclusion is that a more complete record is needed before any finding can be reached on the real issue, whether Defendants committed malpractice.  Resolution of that issue rests on testimony regarding the following matters and perhaps others: what advice (if any) Defendants gave to Plaintiffs in this highly complex and uncertain area; what risks (if any) Plaintiffs determined to take based on that advice or for other reasons; and the reasonableness of Defendants' advice.

Summary judgment must also be denied on Plaintiffs' claim that there was a conflict of interest with respect to the defendant law firm when it represented East Coast in the Appel Federal Lawsuit.  Defendants note that a conflict is usually waivable, s*ee* Code of Professional Responsibility, DR 5-101(A), and they have pointed to record evidence that Plaintiffs consented to the representation after disclosure of the possible conflict.  They contend that the interests of the firm and client were aligned in connection with the Appel Group's lawsuit at the point in time when the representation took place, and that it was appropriate under the circumstances. *See New York Islanders Hockey Club, LLP v. Comerica Bank-Texas*, 115 F.Supp.2d 348, 352-53 (E.D.N.Y. 2003).  Suffice it to say that a determination cannot be made on this conflicting record as to whether there was a conflict that was not fully disclosed or consented to.

For these reasons Plaintiffs' motion for summary judgment must also be denied.

<u>Conclusion</u>

For the reasons stated above, both motions are denied.  Plaintiff may settle an order on five days' notice.  The parties are also directed to confer as to a schedule for any further pretrial proceedings and to contact chambers to schedule a status conference.


Dated: New York, New York
          August 10, 2007

                              */s/ Allan L. Grooper*                    _
                              UNITED STATES BANKRUPTCY JUDGE